**In re The CELOTEX CORPORATION, et al., Debtor.**

**Bankruptcy Nos. 90–10016–8B1, 90–10017–8B1.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 17, 2000.

Jeffrey W. Warren, Bush, Ross, Gardner, Warren & Rudy, P.A., Sara Kistler, Assistant United States Trustee, Tampa, FL, for Debtors.

Kevin E. Irwin, Cincinnati, OH, Legal Representative, David S. Shrager, Philadelphia, PA, for The Celotex Asbestos Settlement Trust.

James L. Patton, Jr., Wilmington, DE, for Legal Representative.

Dennis LeVine, Tampa, John Johnston, Wabash, IN, for Frederick and Wanda Horrocks.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for final evidentiary hearing on the Motion to Determine Applicability of Discharge Injunction, Supplemental Injunction and Third–Party Injunction, and, in the Alternative, Application for Leave to File Late Filed Administrative Claim filed by Frederick & Wanda Horrocks (collectively "Claimants") in the above captioned case. The Court, having considered arguments by counsel, the entire record of this case, testimony of live witnesses, and all other relevant evidence, enters the following findings of fact and conclusions of law. *See* F.R. Civ. P. 52; Fed. R. Bankr.P. 7052.

### *HISTORY OF THIS REORGANIZATION CASE*

The Celotex Corporation and Carey Canada, Inc. (collectively "Debtor") filed voluntary petitions for relief under 11 U.S.C. §§ 1101, et seq. on October 12, 1990. The Debtor's Chapter 11 Plan of Reorganization was confirmed by this Court on December 6, 1996. *See In re Celotex Corp., et al.,* 204 B.R. 586 (Bankr. M.D.Fla.1996). The Confirmation Order and the accompanying findings of fact and conclusions of law, with one unrelated change, were affirmed, adopted, and issued by the United States District Court. (*In re Celotex Corp., et al.,* No. 96–2220–CIV–21, slip op. at 8–9 (M.D.Fla. March 4, 1997); Debtor's Ex. 17; *see* 11 U.S.C. § 524(g)).

Following confirmation, this Court entered an Order Establishing Bar Date for Filing Administrative Claims and Approving Form of Confirmation Notice on

March 7, 1997. That Order set a bar date for administrative expense claims.[1] The Order requires claimants to file their request for administrative expenses "no later than 4:30 p.m. on July 15, 1997, or be forever barred from asserting or receiving payment for such Administrative Claim." (Debtor's Ex. 19).

In the same March 7, 1997 Order, this Court approved the procedures and the actual form of the Notice of Entry of Order Confirming the Plan of Reorganization for the Celotex Corporation and Carey Canada, Inc. (*See id.* and attach.; Debtor's Ex. 16). The notice procedures for all bar dates were extensive; a product of negotiations among the Debtor, the three official committees,[2] the Legal Representative for Unknown Asbestos Bodily Injury Claimants, and other interested parties. Designed to reach all creditors, whether known or unknown, notice was given through direct communication as well as publication notice.[3]

On April 20, 1998, the Claimants filed the Motion at issue in this opinion. The Motion seeks a determination that their administrative expense claim may be filed after the bar date. In support of the Motion, Claimants argue their failure to file the claim in a timely manner is the result of excusable neglect. Alternatively, the Claimants seek a declaration that their claim is not barred by the various injunctions arising from the Confirmation Order.

### ORIGIN OF THE CLAIM

Fred Horrocks resides in Marquette, Michigan, and works as an over the road semi truck driver for a living.[4] On October 1, 1996, he went to a plant owned by the Debtor in Lagro, Indiana to pick up a load of mineral wool for shipment to another plant in L'anse, Michigan.[5] While at the plant in Lagro, Mr. Horrocks fell from the top of his loaded truck while attempting to cover the mineral wool load with a tarp for the trip.[6] An ambulance was called. Mr. Horrocks was taken to a local hospital for treatment and was released a couple of hours later.[7] A Celotex employee picked Mr. Horrocks up at the hospital and brought him back to the plant.[8] Upon arriving back at the plant, Mr. Horrocks left with his load and drove to the L'anse plant to deliver the mineral wool.[9]

On April 1, 1997, the Claimants contacted attorney John R. Johnston at his office in Wabash, Indiana.[10] The attorney assisted the Claimants in determining whether they had a case against the Debtor for personal injury and began gathering evidence to support the claim.[11] In early February 1998, the Claimants met with Mr. Johnston again, and he sent a demand letter to the Debtor on February 3, 1998.[12] Later that same month, the Debtor sent a

---

1. *See* Fed. R. Bankr.P. 3003(c).

2. The three official committees are: Asbestos Health Claimants Committee; Trade Creditors Committee; Asbestos Property Damage Claimants Committee.

3. The Debtors used the services of Rust Consulting, Inc. and Public Communications, Inc. to accomplish the extensive noticing requirements. (Debtor's Ex. 19).

4. (Tr. at 53)(Test. of Frederick T. Horrocks).

5. *Id.* at 54.

6. *Id.* at 61.

7. *Id.* at 63.

8. *Id.;* (Dep. Tr. at 8)(Test. of David Larrowe)(Jan. 25, 1999).

9. (Tr. at 64)(Test. of F. Horrocks). The Court notes there is a fair amount of testimony in the record regarding Mr. Horrocks alleged personal injury. There are the expected conflicts in the evidence concerning specific events. The Court finds it unnecessary to determine the specific facts of the evening's events, or to decide the issues of causation and liability, in order to rule on the issue at hand.

10. (Tr. at 89–90)(Test. of John R. Johnston).

11. *Id.* at 94–95.

12. *Id.* at 95; (Debtor's Ex. 21).

reply informing Mr. Johnston of the bankruptcy case and directing him to contact Debtor's counsel.[13] The record is clear this was the first time the Claimants or their counsel heard of the existence of Debtor's bankruptcy case.[14]

## THE EXCUSABLE NEGLECT ISSUE

When a party in litigation fails to act in a timely manner, the Court has some discretion over whether to permit the act in spite of the delay.[15] The Claimants ask this Court to find that their failure to file a timely claim was the result of excusable neglect, and to allow their claim as if it were timely filed. *See* Fed. R. Bankr.P. 9006(b)(2). The Supreme Court articulated the standard for determining excusable neglect under Rule 9006(b)(2) in *Pioneer Investment Services, Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).

■ In *Pioneer*, a proof of claim was filed twenty days after the bar date in a Chapter 11 case. *Id.* at 384, 113 S.Ct. 1489. The delay was attributable to the claimant's bankruptcy counsel, who inadvertently overlooked the bar date order. *Id.* In holding the facts justified a finding of excusable neglect, the Supreme Court examined the following factors before allowing the late filed claim: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reason-

able control of the movant, and whether the movant acted in good faith." *Id.* at 395, 113 S.Ct. 1489.

The *Pioneer* Court determined the combination of the claimants' good faith and the lack of prejudice to the debtor and the lack of impact on the judicial proceeding formed a basis for allowing the claim. *Id.* However, the Supreme Court stated, "[t]o be sure, were there any evidence of prejudice to petitioner or to judicial administration in this case, or any indication at all of bad faith, we could not say the Bankruptcy Court abused its discretion in declining to find the neglect to be 'excusable.'" *Id.* The Court now examines the facts of the instant case using the *Pioneer* standard.

## ANALYSIS

■ On the subject of the reason for delay, the Claimants assert they were gathering information for their personal injury claim. They did not want to send a demand letter to the Debtor until all of the evidence was together. Given these circumstances, the Court finds the reason for the delay was at all times in the reasonable control of the Claimants.[16]

While the delay was in Claimants' control, there is nothing in the record to suggest the motive for the delay in filing was in bad faith. There is no evidence Claimants held back their claim for some strategic purpose, or to intentionally ignore the Court's deadline. *See Pioneer*, 507 U.S. at 387–88, 113 S.Ct. 1489.[17] The

13. (Tr. at 107)(Test. of Johnston); (Debtor's Ex. 22).

14. *Id.;* (Tr. at 67–68)(Test. of F. Horrocks); (Tr. at 83)(Test. of W. Horrocks).

15. This Court may, "on motion made after the expiration of the specified time period[,] permit the act [filing of the claim] to be done where the failure to act [file] was the result of excusable neglect." Fed. R. Bankr.P. 9006(b)(2).

16. The Court notes there is evidence in the record that Mr. Horrocks delayed five months before contacting Mr. Johnston, and that the last official diagnosis supporting the claim

came in May 1997, at least two months before the bar date, and approximately eight months before they notified the Debtor of their claim.

17. The Court is satisfied Claimants in this case had no actual knowledge the Debtor was in bankruptcy until they received a letter in response to their demand. However, at the close of Claimants' case, this Court granted a motion by the Debtor pursuant to Fed. R.Civ.P. 52(c) on the issue of sufficiency of the notice given to alert the public to the administrative bar date. For the reasons stated in open court, this Court finds the noticing procedures undertaken in this case were sufficient as a matter of law.

Court finds the acts of the Claimants and their counsel were in good faith.

The Court now turns to the danger of prejudice to the Debtor. The instant case is not the average bankruptcy reorganization case. To date, there are well over 600,000 claims filed in this case, totaling over $500,000,000,000.00.[18] In a case of this size it is fair to say that one additional claim appears to be a proverbial 'drop' in a veritable sea of claims.

The bulk of the claims involved are for asbestos related personal injury claims. Under the reorganization plan, the Asbestos Settlement Trust ("Trust") took over the assets of the bankruptcy estate, liquidating and paying all the asbestos claimants from the profits of the continuing business. *See Celotex*, 204 B.R. at 602–04, 619–20. Additionally, under the Agreement Regarding Disputed Claims, the Trust is obligated to indemnify any costs incurred by the Debtor in litigating disputed nonasbestos claims such as the one at issue in this case.[19]

Under the terms of Confirmation, administrative claims of the type in question in the instant case receive almost dollar for dollar on the amount of a claim.[20] For this reason, the bar dates are an integral part of this reorganization. The bar dates allowed a moment in time where the numerous factions in this case came together and agreed to the treatment of their claims. Each time this Court allows a late filed administrative claim, it potentially affects those who hold timely filed claims by further reducing the funds available to pay timely filed claims, thus changing postconfirmation claims treatment.[21] The Court finds this fact prejudices the Debtor's ability to effectively carry out its plan of reorganization as it was confirmed.

The Claimants delayed eighteen months from the date of the incident before filing their claim against the Debtor. In that time, this case confirmed a reorganization plan that provides for the particular treatment of certain classes of claims. As noted above, allowing late filed claims, particularly administrative claims, affects that treatment.

The Claimants assert there is no harm in allowing their single claim. However, as of the date of this hearing there are approximately eighty other similarly situ-

The Court further finds the Claimants were not entitled to individual notice in this case. Fifteen months passed between Mr. Horrock's accident at the Celotex plant in Lagro, Indiana and the sending of the demand letter to Celotex. The evidence offered to support the Claimants' assertion that Debtor should have known of the potential of their lawsuit and, thus, given them individual notice of the existence of the bankruptcy case, is not sufficiently persuasive to warrant an exception to the noticing procedures utilized in this case.

**18.** The Court notes this total involves both Debtors, Celotex Corporation and Carey–Canada, Inc., and that some of the claims are filed by single claimants separately against each entity. However, the Court also notes a single claim for asbestos property damage may be a municipal claim involving large sums of money. *See, e.g.,* Claim No. 6994 filed by The City of New York for $559,110,-620.00; Claim No. 7659 filed by Los Angeles Unified School District for $38,421,206.07; Claim No. 6922 filed by the School District of Philadelphia for $5,169,393.00.

**19.** (*See* Debtor's Ex. 13).

**20.** (Tr. at 171)(Test. of George M. Wood). General nonasbestos claims receive a 90% distribution. *Id.; Celotex*, 204 B.R. at 600. In contrast, asbestos personal injury claims receive a *proposed* 12% distribution. *Celotex*, 204 B.R. at 600. The amount of the personal injury distribution is subject to the continued financial success of the Trust, and may go below the proposed 12%.

**21.** The Claimants assert there is $15,000,-000.00 set aside by the Debtor for the purpose of paying administrative expenses. The Court finds this characterization of these funds is inaccurate. (Tr. at 174–5)(Test. of Wood). The funds in question were given to the Debtor by the Trust for ease of administration during the initial set up of the Trust, and approximately $14,500,000.00 of this amount has already been disbursed to pay attorneys' fees and costs. *Id.*

ated claimants in this case.[22] Of those eighty, twenty, or one fourth, are currently in litigation with the estate in an attempt to have their claims allowed.[23] These circumstances raise a very real concern about setting precedents with respect to granting exceptions to the bar dates.

As noted before, the mere filing of a single claim in this case would hardly be noticed. However, if the Court permits exceptions to the bar dates in this case based on this reasoning, the estate could potentially face additional claims; claims involving lawsuits that must be defended at the expense of the Trust. The Court finds the potential for additional litigation presents an impediment to the effective judicial administration of this case. Specifically, allowing late filed claims potentially impairs the process of adjudicating other claims, incurs additional costs, and prevents closure of litigation.

In review, the Court finds the delay was in the control of the Claimants at all times, and that the Claimants delayed a minimum of nine months and a maximum of eighteen from the date of the injury until the proof of claim was filed. The Court finds the noticing procedures are legally sufficient, and rejects the argument that the delay was only from the time the Debtor replied to the demand letter. Despite the delay, the Court finds the Claimants have at all times acted in good faith. Nevertheless, the danger of prejudice to the Debtor and the effect of the delay on the judicial administration of this case leads this Court to conclude that the neglect involved here is not excusable.

The Eleventh Circuit Court of Appeals recently reviewed a prior application of the *Pioneer* factors by this Court. *See Sunset Vine Tower v. Celotex Corp.*, No. 99–10828, slip op. at 11–13, 196 F.3d 1262 (11th Cir. Sept. 24, 1999). In affirming this Court's denial of motions similar to the Claimants' motion,[24] the *Sunset/Bokay* Court states "[t]he bankruptcy court ... correctly placed primary importance on 'prejudice to the nonmoving party' and 'the interest of efficient judicial administration'...." *Id.* at 12 (quoting *Advanced Estimating Sys. v. Riney*, 77 F.3d 1322, 1325 (11th Cir.1996)). As in *Sunset/Bokay*, this Court again places the emphasis on the prejudice to the Debtor and to the efficient judicial administration of this case, and denies the Claimants' Motion. Further, the Court finds no reason in the record to grant Claimants' alternative request for relief as to do so would have the same effect as allowing the late filed claim.

Accordingly, it is

ORDERED, ADJUDGED, AND DECREED that the Motion to Determine Applicability of Discharge Injunction, Supplemental Injunction and Third–Party Injunction, and, in the Alternative, Application for Leave to File Late Filed Administrative Claim filed by Frederick & Wanda Horrocks be, and the same is hereby, denied.

---

**22.** *Id.* at 177–8.

**23.** *Id.*

**24.** The Court notes one distinction between the *Sunset/Bokay* claimants and the Claimants in the instant case. Counsel for the *Sunset/Bokay* claimants were aware of both the Debtor's bankruptcy and the bar date, but chose not to file a claim because they did not have sufficient evidence to do so prior to the bar date. *Id.* at 4–5. While it may be tempting to see this distinction as a difference, this Court finds this fact does not change the analysis. The parties in each case acted in good faith; this fact is not disputed. However, to make the Claimants' lack of knowledge significant, notice must be insufficient. As this Court ruled the notice of the bar date is sufficient as a matter of law, this distinction is insignificant.